## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jonathan Blair-Hanson, | Case No. 19-cv-2195 (NEB/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Susan Johnson, MSOP-Moose Lake Special Services Program Supervisor; Jensina Rosen, former MSOP-Special Services Supervisor; and Aaron Engleson, MSOP-Moose Lake Mailroom employee, *sued in their individual and official capacities*, | |
| Defendants. | |

Jonathan Blair-Hanson, MSOP, 1111 Highway 73, Moose Lake, MN 55767 (pro se Plaintiff); and

Aaron Winter and Roger Yang, Assistant Attorneys General, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101 (for Defendants).

## I. INTRODUCTION

This matter is before the Court on Defendants Susan Johnson, Jensina Rosen, and Aaron Engleson's (collectively, "Defendants") Motion to Dismiss Plaintiff's Complaint, ECF No. 12. This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Nancy E. Brasel, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. Based upon the record, memoranda, and proceedings herein, it is

1

recommended that Defendants' motion be granted, and this matter be dismissed without prejudice.

## II. BACKGROUND

Pro se Plaintiff Jonathan Blair-Hanson has been involuntarily committed to the Minnesota Sex Offender Program ("MSOP"), which is run by the Department of Human Services. Compl. ¶¶ 1, 6, 7, ECF No. 1. Defendants are current and former employees of MSOP. Compl. ¶¶ 2, 7(b)-(d), 8, 9. Johnson is the Special Services Program Supervisor. Compl. ¶ 7(b). She "is [also] the mailroom supervisor and oversees all mail." Compl. ¶ 15. Rosen is the former Special Services Program Supervisor. Compl. ¶ 7(c). Engleson works in the mailroom. Compl. ¶ 7(d).

### A. MSOP's Client Mail Policy

MSOP Policy Number 420-5030 is entitled "Client Mail." Client Mail Policy, Ex. 1 to Decl. of Aaron Winter, ECF No. 15-1.[1] The Client Mail Policy defines "legal mail" as "correspondence to or from court, court staff, verified attorneys and established groups of attorneys involved in representing clients in judicial proceedings." Client Mail Policy at 1. For a piece of mail to qualify as legal mail, "[t]he destination or return address must clearly indicate it is to or from one of these sources . . . ." Client Mail Policy at 1.

---

[1] When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Courts may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[] without converting the motion [to dismiss] into one for summary judgment." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quotation omitted); *see, e.g.*, *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1150-51 (8th Cir. 2012); *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). Although not attached to the Complaint, the Client Mail Policy was incorporated by reference, Compl. ¶ 17 & n.1, and may be properly considered by the Court.

Legal mail is considered "privileged mail." Client Mail Policy at 2. Under the Client Mail Policy, "the designated staff opens the privileged client mail in the client's presence, removing and scanning the contents and envelope to ensure it contains no contraband or additional enclosed letters or envelopes." Client Mail Policy at 8.

**B. Mail from J. Scott Braden, P.A.**

Towards the end of March 2018, a piece of Plaintiff's mail was opened outside of his presence. Compl. ¶ 10. The mail was from "J. Scott Braden, P.A." Compl. ¶ 14; *see* Compl. ¶ 11. Attorney J. Scott Braden represents Plaintiff in connection with other proceedings. *See* Compl. ¶¶ 2, 14, 16. Braden is on MSOP's "approved attorney call list." Compl. ¶ 14; *see* MSOP Approved Privilege Call List at 2, Ex. to Pl's Mem. in Opp'n, ECF No. 22; Compl. ¶ 17 & n.2.[2]

**C. Engleson**

Upon receipt of the opened mail,

> Plaintiff submitted a Client Request Form . . . to the mailroom[,] stating: "Today at 10:30, I got my mail and my Le[g]al mail was opened by this place. The point I'm making is that my legal mail was not open[ed] in front of me. So I would like to know who opened my legal mail outside of my presence[?"]

---

[2] Defendants agree that the approved call list is incorporated by reference into the Complaint. *See, e.g.*, Defs.' Mem. in Supp. at 3 n.5, ECF No. 14. In support of their motion to dismiss, Defendants included a "template version" of the approved call list bearing the same reference number cited in the Complaint. *Compare* Compl. ¶ 17 n.2 *with* Ex. 2 to Winter Decl., ECF No. 15-1; *see* Defs.' Mem. in Supp. at 4 ("The [a]pproved [c]all [l]ist is a blank form containing spaces for attorney names and phone numbers, in addition to a list of entities from whom calls are always privileged."); Defs.' Reply at 3 n.1 (describing Exhibit 2 as "a template version of the [a]pproved [c]all [l]ist"), ECF No. 25. Along with his opposition, Plaintiff submitted a completed version of this approved call list form, again bearing the same reference number cited in the Complaint, that lists numerous attorneys and agencies along with their approved phone numbers, including Braden. *Compare* Compl. ¶ 17 n.2 *with* MSOP Approved Privilege Call List at 2; *see* Defs.' Reply at 3 n.1 ("Plaintiff produce[d] a completed version of the [a]pproved [c]all [l]ist."). The Court has considered the completed approved call list to be incorporated by reference into the Complaint. *See supra* n.1.

Compl. ¶ 10.

Engleson answered Plaintiff's Client Request Form. Compl. ¶ 10. Engleson wrote:
"'The mailroom does not open client legal mail. Was the item clearly marked as such?
I.E., stamped 'attorney[,]' 'legal,'[] or 'privileged' on the front[?]'" Compl. ¶ 10.

Plaintiff responded via another Client Request Form, stating:

> "J. Scott Braden, P.A., [sic] Normally PA [sic] stands for
> private attorney. If you had any question to what PA [sic]
> stood for, you could/should have looked it up on the internet
> @ www.bradenlawoffice.com[.] You would have found it's a
> law firm. Why did you not take this option when opening my
> legal mail[?]"

Compl. ¶ 11.

Engleson replied: "'P.A. stands for many things, including personal accountant. Per
mail policy to be considered legal mail it must be clearly marked as such. The letters 'P.A.'
are not sufficient markings. Please request your attorney to mark 'legal' or 'attorney' on
your items.'" Compl. ¶ 11.

**D. Rosen**

Plaintiff next sent Rosen, the former Special Services Supervisor, a Client Request
Form. Compl. ¶ 12. Attaching his correspondence with Engleson, Plaintiff wrote: "'Please
see attached. I'm asking the same question?[']" Compl. ¶ 12. Rosen responded: "'After
reviewing this situation & request, 'P.A.' is an acronym for many titles. As such, the item
was not clearly marked as legal mail. Please work with your attorney to ensure incoming
mail is clearly identified as legal mail/from a law office.'" Compl. ¶ 12.

**E. Johnson**

Plaintiff then sent Johnson, the Special Services Supervisor, a Client Request Form. Compl. ¶ 13. Attaching his correspondence with Engleson and Rosen, Plaintiff wrote: "'Please see attached. I'm asking the same question?[']" Johnson responded: "'Mr. Blair-Hanson, you've been given clear explanation that your incoming mail was not clearly marked per policy and to please inform your attorney policy guidelines as such. Thank you.'" Compl. ¶ 13.

**F. Litigation**

Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action against Defendants in their individual and official capacities,[3] alleging that they "implemented, retained[,] and carried out policies through the MSOP that violated [his] First Amendment . . . (attorney-client privilege), Fourth Amendment (unreasonable search and seizure)[,] and Fourteenth Amendment (right of privacy) rights in receiving unopened legal mail from his attorney." Compl. ¶ 9; *accord* Compl. ¶¶ 10, 11, 12, 13, 14, 15; *see* Compl. ¶ 17. Plaintiff alleges that the "letter from his attorney was clearly legal mail and should not have been opened outside of [his] presence." Compl. ¶ 16. Plaintiff alleges that Defendants were each made aware that his legal mail had been opened outside of his presence and "failed to correct the

---

[3] Defendants state that "Plaintiff does not clearly delineate in what capacity he brings his claims against [them]." Defs.' Mem. in Supp. at 1 n.3. Defendants argue "to the extent that Plaintiff's Complaint can be read as seeking damages against the Defendants in their official capacities, the claim fails due to sovereign immunity." Defs.' Mem. in Supp. at 11-12. The caption of the Complaint and numerous paragraphs of the Complaint itself indicate that Plaintiff is seeking relief against Defendants in their individual and official capacities. *See, e.g.*, Compl. ¶¶ 9, 10, 11, 12, 13, 14, 15. Moreover, Plaintiff also specified that he "seeks monetary and compensatory damages against Defendants in their individual capacities only" and "declaratory and injunctive relief in [their] official capacities only." Compl. ¶ 2; *see* Pl.'s Mem in Opp'n at 4 ("The Complaint made very clear that Plaintiff was seeking declaratory and injunctive relief against Defendants in their official capacities only."), ECF No. 21.

issue when [it was] brought to his [or her] attention." Compl. ¶ 10; *accord* Compl. ¶¶ 9, 11, 12, 13.

Plaintiff also alleges that Defendants "continued to open [his] legal mail outside [of] his presence." Compl. ¶ 14. According to Plaintiff, "Johnson's staff members directly in the mail room tampered with his legal mail, even after being informed that [his] mail coming from his attorney was legal, and could not be opened outside [of] his presence." Compl. ¶ 15. Plaintiff alleges that "Defendants failed to remedy the ongoing constitutional violations when [he] filed [Client Request Forms] regarding the issue." Compl. ¶ 16. Plaintiff alleges that "[t]he pattern of Defendants[] opening [his] Legal Mail, even after being informed . . . that such mail was legal and could not be opened outside [of his] presence, violated [his] constitutional rights." Compl. ¶ 17.

## III. ANALYSIS

Defendants move for dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### A. Legal Standard

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "This standard requires the plaintiff to allege 'more than a sheer possibility

6

that a defendant has acted unlawfully.'" *In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).

"[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955.

"In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, [courts] hold a pro se complaint, however inartfully pleaded, to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quotation omitted). But, "[a]lthough pro se complaints are to be construed liberally, 'they still must allege sufficient facts to support the claims advanced.'" *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Stated differently, "this standard does not excuse pro se complaints from 'alleg[ing] sufficient facts to support the claims advanced.'" *Gerstner v. Sebig, LLC*, 386 F. App'x 573, 575 (8th Cir. 2010) (per curiam) (alteration in original) (quoting *Stone*, 364 F.3d at 914).

**B.  Section 1983**

"Section 1983 creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution." *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017) (quotations and citations omitted). "To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013); *see* 42 U.S.C. § 1983.

"Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981) (citing *Wolff v. McDonnell*, 481 U.S. 539, 576-77 (1974)); *accord Beaulieu v. Ludeman*, 690 F.3d 1017, 1037 (8th Cir. 2012); *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997).  The Eighth Circuit Court of Appeals has applied this principal to the opening of legal mail at MSOP.  *Beaulieu*, 690 F.3d at 1037.

**1.  "Legal" Mail**

As an initial matter, it is questionable whether Plaintiff has alleged sufficient facts from which it can be inferred that the piece of mail at issue in this case was constitutionally protected legal mail.  Taking the facts alleged in the Complaint as true, Braden is Plaintiff's attorney; Braden is on MSOP's approved call list; and Plaintiff's mail from "J. Scott Braden, P.A." was opened outside of his presence.  As best as this Court is able to tell, the

facts forming the basis of the mail's alleged "legal" nature are the "P.A" designation and Braden's inclusion on MSOP's approved call list.

In *Wolff*, the Supreme Court concluded that it was "entirely appropriate that the State require any [attorney] communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment." 418 U.S. at 576; *see Jensen*, 648 F.2d at 1182-83.   Plaintiff contends that the "P.A." designation is sufficient to indicate that the mail was from an attorney.  Thus, as the Court understands it, Plaintiff's position is that the "P.A." designation "clearly indicate[d]" this was legal mail under the Client Mail Policy.

On a motion to dismiss, courts draw reasonable inferences and "reject . . . unwarranted [ones]."  *In re SuperValu*, 925 F.3d at 962 (quotation omitted); *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.  As Defendants point out, the "P.A." designation under Minnesota law speaks to the organizational structure of a professional entity, not necessarily the professional services offered, which may or may not be legal services.  *See* Minn. Stat. § 319B.05, subd. 2(1) (requiring name of professional corporation to end "with any one of the following phrases, words, or abbreviations: 'Professional Corporation'; 'Professional Service Corporation'; 'Service Corporation'; 'Professional Association'; 'Chartered'; 'Limited'; 'P.C.'; 'P.S.C.'; 'S.C.'; 'P.A.'; or 'Ltd.'"); *see also* Minn. Stat. § 319B.02, subds. 17 (defining "professional" as "a natural person who is licensed by the laws of the state of Minnesota or similar laws of another state to furnish one or more of the categories of professional services listed in subdivision 19"), 19 (including medical, social, counseling, dental, veterinary, architectural, interior design, accounting, and legal services

9

among categories of professional services); *cf.* Minn. Stat. § 326A.10(e) (unlawful for person or professional entity without proper certification or permit to "assume or use the title . . . 'public accountant,' . . . or use . . . the abbreviation[] . . . 'PA'").

Other than the "P.A." designation, Plaintiff has not alleged that there was anything on the mail "clearly indicat[ing]" it was from a lawyer and contained lawyer-client communications. *See Jensen*, 648 F.3d at 1182-83; *cf. O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (per curiam) (no constitutional violation where jail opened envelope containing three letters addressed to a United States Magistrate during ordinary screening as "envelopes were not clearly identified as privileged legal communications"); *Harrod v. Halford*, 773 F.2d 234, 236 (8th Cir. 1985) (per curiam) ("Although the letters in the present case are distinguishable because they are clearly marked as being from attorneys or courts, and were addressed to a named inmate, *Jensen* nevertheless demonstrates that the mere fact that a letter comes from a legal source is insufficient to indicate that it is confidential and requires special treatment."). Plaintiff alleges that "[i]f any Defendant had a question of whether [his] mail was legal . . . , all [Defendants] would have had to do is look on the approved attorney call list." Compl. ¶ 14. But, in *Wolff*, the Supreme Court rejected the idea that prison officials were required to do some sort of investigatory follow-up if there was doubt as to whether the mail was actually from an attorney. *See* 418 U.S. at 576 ("If prison officials had to check in each case whether a communication was from an attorney before opening it for inspection, a near impossible task of administration would be imposed.").

Nevertheless, solely for purposes of the instant motion and in light of Plaintiff's *pro se* status, the Court will assume the mail from "J. Scott Braden, P.A." was legal mail. *See Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017).

### 2. Single Instance of Opened Legal Mail

Significantly, the Eighth Circuit "ha[s] never held or suggested than an isolated, inadvertent instance of opening incoming confidential legal mail will support a § 1983 damage action." *Gardner*, 109 F.3d at 431; *accord Beaulieu*, 690 F.3d at 1037; *see also Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012). Defendants argue that Plaintiff has only identified "a single instance of an MSOP employee inadvertently opening mail from . . . [his] attorney." Defs.' Mem. in Supp. at 10.

In his Complaint, Plaintiff specifically identifies one piece of legal mail alleged to have been opened outside of his presence—the mail from J. Scott Branden, P.A. Plaintiff goes on to allege that Defendants have "continued to open [his] legal mail outside [of] his presence," Compl. ¶ 14; Defendant have done so "on numerous occasions," Compl. ¶ 15; and there is a "pattern of Defendants[] opening [his] Legal Mail, even after being informed . . . that such mail was legal and could not be opened outside [of his] presence," Compl. ¶ 17; *see* Compl. ¶ 16. But, other than the piece of mail from J. Scott Braden, P.A., Plaintiff has not identified another instance in which his legal mail was opened outside of his presence in the Complaint. Nor does the Complaint contain facts describing circumstances from which the Court could reasonably infer that Defendants continued to open Plaintiff's legal mail.

In response to Defendants' motion, Plaintiff contends that this is not an "isolated incident." Pl.'s Mem. in Opp'n at 8. Citing to *Beaulieu*, Plaintiff contends that "Defendants['] policies and practices have been ongoing for years" and therefore "Defendants have been on continued notice that their actions violate the Constitution." Pl.'s Mem. in Opp'n at 8. Plaintiff is correct that one of the issues in *Beaulieu* was the inadvertent opening of legal mail at MSOP. *See* 690 F.3d at 1035-37. Yet, as Defendants point out, Plaintiff "mischaracterizes the holding of *Beaulieu*." Defs.' Reply at 4. In *Beaulieu*, the Eighth Circuit did *not* hold that MSOP's mail policy was unconstitutional. Rather, as discussed more fully in the next section, the Eighth Circuit concluded that no constitutional violation occurred because there was "no evidence that any inadvertent openings of [the MSOP patients'] legal mail resulted in actual prejudice." *Beaulieu*, 690 F.3d at 1037.

Plaintiff further contends that "Defendants . . . have continued to violate the Constitution by opening [his] legal mail outside [of] his presence"; the "continued opening of [his] legal mail is an improper motive by MSOP personnel" and infringes on his "right . . . to be free from interference with counsel or access to the courts"; and "Defendants have shrugged this notice off their shoulders and have an attitude that they can simply violate the Constitution no matter what without any valid justification." Pl.'s Mem. in Opp'n at 8-9. Again, however, there are no facts offered in support of these conclusory statements. Moreover, "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (quotation omitted); *see Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th

12

Cir. 2019) ("While Glick presented additional facts in his oppositions to the motions to dismiss and now presents additional facts on appeal, those factual allegations were not included in his amended complaint and, thus, cannot be considered on a motion to dismiss.").

At bottom, taking the facts in the Complaint as true and viewing them in the light most favorable to Plaintiff, Plaintiff has alleged a single instance of his legal mail being opened outside of his presence. As discussed more fully in the next section, such "an isolated incident, without [more], . . . does not give rise to a constitutional violation." *Gardner*, 109 F.3d at 431 (quotation omitted); *accord Beaulieu*, 690 F.3d at 1037.

### 3. Legal Mail Opened Without More

Defendants also argue that Plaintiff has failed to allege that the opening of his legal mail resulted in actual prejudice.

In *Gardner*, the Eighth Circuit observed:

> The act of opening incoming mail does not injure an inmate's right to access the courts. The policy that incoming confidential legal mail should be opened in inmates' presence instead serves the prophylactic purpose of assuring them that confidential attorney-client mail has not been improperly read in the guise of searching for contraband.

109 F.3d at 431. "Given this limited purpose, [the appellate court reasoned that] inadvertent opening of legal mail cannot be actionable under § 1983 . . . because to assert a successful claim for denial of meaningful access to the courts an inmate must demonstrate that he suffered prejudice." *Id.* (quotation omitted). Accordingly, "an isolated incident, without any evidence of improper motive or resulting interference with the inmate's right

13

to counsel or to access to the courts, does not give rise to a constitutional violation." *Id.* (quotation omitted).

The Eighth Circuit applied these principles to the inadvertent opening of legal mail at MSOP in *Beaulieu*. In *Beaulieu*, the legal mail of five MSOP patients was opened outside of their presence. 690 F.3d at 1036-37. The MSOP patients, however, "provided no evidence that any inadvertent openings of their legal mail resulted in actual prejudice." *Id.* at 1037. The Eighth Circuit held that "[a]bsent an articulation of how the alleged wrongful conduct actually blocked [the MSOP patients'] access to filing a complaint, or caused a filed complaint to be deficient, [the patients'] alleged injuries [we]re merely speculative." *Id.* (quotation omitted).

Here, Plaintiff has not pleaded facts from which the Court could reasonably infer that the opening of his legal mail was driven by any improper motive of Defendants. *Id.*; *Gardner*, 109 F.3d at 431. Plaintiff contends that he "has raised serious questions" as to Defendants' purported justification for opening his legal mail and it is unclear whether the opening of his legal mail was justified by "'[s]ecurity concerns.'" Pl.'s Mem. in Opp'n at 9 n.7. But, there are no facts from which it could reasonably be inferred that the mail at issue was opened for any reason other than the mail did not "clearly indicate" that it was from a lawyer.

Similarly, Plaintiff has not pleaded facts from which the Court could reasonably infer an interference with his right to counsel. *Beaulieu*, 690 F.3d at 1037; *Gardner*, 109 F.3d at 431; *see Thomsen v. Ross*, 368 F. Supp. 2d 961, 974 (D. Minn. 2005) ("While the three letters were opened improperly, plaintiff suffered no loss of counsel's assistance. The

14

opened letters were not confiscated, nor did they prevent him from communicating with his attorney."). Plaintiff does not allege that his legal mail was read. *Cf. Foster v. Helling*, 210 F.3d 378, at *1 (8th Cir. 2000) (per curiam). *But see Hayes*, 849 F.3d at 1212.

Lastly, Plaintiff has not pleaded facts from which the Court could reasonably infer interference with his access to the courts. Like the MSOP patients in *Beaulieu*, Plaintiff has not articulated how the opening of this piece of legal mail resulted in actual prejudice. 690 F.3d at 1037; *see Gardner*, 109 F.3d at 431; *see also Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003) ("There is nothing in the record to show Kind lost a specific claim in any legal proceeding as a result of the jail's alleged inference."); *Thomsen*, 368 F. Supp. 2d at 974 ("Neither plaintiff nor his trial counsel have identified any conceivable way in which this information, even if read by jail officials, interfered with his defense or hindered his access to the courts."). *But see Hayes*, 849 F.3d at 1212-13. While Plaintiff contends that Defendants can uncover the details of any prejudice during discovery, Plaintiff has not pleaded facts from which it could reasonably be inferred that such prejudice even occurred. "[P]laintiff is obligated to provide within his complaint sufficient facts to establish 'the grounds of his entitlement to relief.'" *In re SuperValu*, 925 F.3d at 962 (quoting *Twombly*, 550 U.S. at 555 (cleaned up)); *see Gerstner*, 386 F. App'x at 575; *Stringer*, 446 F.3d at 802.

Therefore, taking the facts alleged in the Complaint as true and viewing them in the light most favorable to Plaintiff, Plaintiff has alleged a single instance of his legal mail being opened outside of his presence without more. Accordingly, Plaintiff has failed to

state a claim for relief.[4]  *See Beaulieu*, 690 F.3d at 1037; *Gardner*, 109 F.3d at 431; *see also Norman v. McConnich*, No. 5:10CV00001 JMM, 2010 WL 545936, at *2 (E.D. Ark. Feb. 10, 2010).

## IV. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Motion to Dismiss Plaintiff's Complaint, ECF No. 12, be **GRANTED**, and this matter be **DISMISSED WITHOUT PREJUDICE**.


Dated: May____21____, 2020                    _____*s/ Tony N. Leung*_____
                                              Tony N. Leung
                                              United States Magistrate Judge
                                              District of Minnesota

                                              *Blair-Hanson v. Johnson et al.*
                                              Case No. 19-cv-2195 (NEB/TNL)


## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

---

[4] Because the Court has concluded that Plaintiff has failed to state a claim regarding the opening of his legal mail, the Court declines to address Defendants' arguments with respect to their lack of personal involvement and qualified immunity.  *See Beaulieu*, 690 F.3d at 1037 n.11.